ELLIS, Judge.
This is a suit by the plaintiff for compensation for total and permanent disability .as a result of an accident on April 3, 1950 while in the employ of the Mclnnis-' Gray Blind Company.
Defendant admitted the accident but denied that plaintiff suffered any disability other than for eleven days as the result of a mild lumbosacral strain.
The lower court awarded plaintiff compensation for a period of six months.
The defendant appealed from this judgment and the plaintiff, by way of answer to the .appeal, is seeking compensation for total and permanent disability.
The record reveak that plaintiff was employed as a helper in the installation of an awning for his employer, the Mclnnis-Gray Blind Company. He was descending a ladder when his foot slipped and to prevent a fall he grabbed onto one of the rungs of the ladder with his hands. This occurred at about 11:30 A.M. on April 3, 1950, and the job was completed by noon and plaintiff rode into Lake Charles with his straw boss whom he told about the accident and back injury. He reported to Dr. Fisher about 12:30 P.M., Dr. Fisher examined plaintiff and saw him approximately seven times in eleven days or until April 14, 1950 at which time Dr. Fisher discharged him as able to return to work.
Dr. Fisher testified that plaintiff complained of pain but that was the only positive finding on examination. He could find no objective symptoms to justify plaintiff’s complaints, but on April 10, 1950 he did refer him to Dr. Stakely Hatchette for X-rays which he later examined, and it is his testimony that the X-rays showed no injury to the bone or the joints and apparently the back was normal. This doctor testified that he made a provisional diagnosis of mild lumbosacral strain when plaintiff reported to him immediately after the injury but that it was his opinion that plaintiff suffered no disability after April 14, 1950. His treatment consisted of heat therapy.
Dr. Stakely Hatchette, a radiologist, testified that from an examination of the X-ray which he made he was unable to find any unusual or abnormal appearances of any kind in plaintiff’s back.
Plaintiff was also examined by Dr. Charles V. Iiatchette twice, the last time on October 4, 1950, just shortly before the trial on November 2, 1950. It is his testimony that he could find nothing wrong with the plaintiff’s back to justify plaintiff’s complaints. He testified that plaintiff did not complain of the straight leg raising which was normal, but he did complain bitterly of the flexed leg test which releases the back muscles. In other words, it was his opinion that plaintiff was exaggerating his pains, and, also, that any muscle spasms which he detected were not involuntary but voluntary or deliberate on the part of plaintiff. Also, he could find noth *290 ing from the X-rays taken by Dr. Stakely Hatchette that revealed any abnormality or objective symptoms as a cause of plaintiff’s pains, and he was of the positive opinion that plaintiff was not disabled at all.
Defendant also offered the testimony of Dr. Garnett E. Barham who testified that he examined the plaintiff only on June 29, 1950, and that plaintiff at that time complained of pain in his lower back, legs and hips, and that as a result of a complete physical examination he found no muscle spasm or rigidity, and it was his opinion that plaintiff’s complaints of pain were exaggerated. He also examined thé X-rays that had been made at that time by Dr. McKinney and Dr. Hatchette, and that from them he found nothing abnormal. He did testify, 'however, that although he found no permanent disability of any nature, whatsoever, that as plaintiff complained very bitterly and severely of pain in his back that he gave him the benefit of the doubt and recommended four weeks of temporary disability from June 29'th. This doctor admitted that in a report which he made to defendant’s attorneys that “I do feel that Mr. White suffered a severe sprain of the lumbar muscles of his lower back as a result of his slipping off the ladder.”
Dr. R. Gordon Holcombe testified on behalf of the defendant and it was his positive opinion that plaintiff was suffering from no disability on the date of his examination, October 4, 1950. Dr. Holcombe testified that plaintiff complained of pain as a result of a test which usually did not elicit any pain in a person with a low back injury. It was his opinion that plaintiff was exaggerating his complaints and that he could find no clinical evidence of any disability at the time of his examination.
On the other hand, plaintiff has offered the testimony of Dr. Edwin C. Campbell and Dr. Wilson D. Morris.
Dr. Morris examined the plaintiff on the 22nd day of May, 1950 and around October 23, 1950 and one other time, the date not being given. It was his opinion when he examined the plaintiff on May 22nd that plaintiff had a possible intervertebral disc injury and he referred him to Dr. Campbell. Dr. Morris testified that he found a marked limitation of motion of the low back and a good deal of rigidity of the muscles and also a decreased feeling in the lateral aspect of the leg which confirmed the numbness complained of by plaintiff. It was Dr. Morris’ positive opinion that the plaintiff was disabled to do heavy, manual labor. He stated, “Frankly, I felt he had a disc injury and that, as such, he would not be capable of doing arduous labor until such time as that had been corrected.”
Dr. Campbell testified that he examined the plaintiff in May and twice in October, 1950. The last examination was made on October 30, a few days prior to the trial. When he examined the plaintiff in May he found marked limitation of motion in the low back and in both lower extremities, and the X-rays which he saw, in his opinion, revealed a slight narrowing of his lumbo-sacral interspace and a slight loss of the usual lumbar lordosis. It was his opinion that in May plaintiff was suffering from some strain of the low back and that plaintiff was not able to perform heavy manual labor. He w.as also of the same opinion as the result of his examination in October 1950. He believed it possible that a lumbo-sacral disc injury had occurred in plaintiff’s case. This doctor was asked: “Q. As I understand it then, it is impossible to estimate the time at which this person could perform heavy manual labor? A. That is my opinion.” On cross examination this doctor testified: “I feel that the man has disability in his low back region, either ■a lumbosacral sprain or an injury to an in-tervertebral disc, and that he is unable, or was unable at the times that I examined him, to perform heavy manual labor and that he is in need of treatment for his disability.”
Also offered on behalf of the plaintiff was the testimony of Dr. G. C. McKinney, a radiologist, who made an X-ray examination of the plaintiff on May 24, 1950, May 31, 1950 and October 10, 1950. These X-rays were of the lumbar spine. He testified that in these X-rays he found a narrowed lumbosacral disc which is an indication of disc injury. As a result of his first X-rays he reported a probable narrowing *291 of the space between the last segment of the lumbar spine and the first segment of the sacrum. The last X-ray examination which he made was a “small coned examination” for the purpose of examining the one afea only which he testified was narrowed-b He also found a lack of lordosis whicli refers to the curvature of the back, which .he testified would be a symptom of muscle spasm. It was his testimony that the small coned examination was more accurate than a general X-ray of the back.
Thus, we have three doctors testifying for the defendant that the plaintiff was not permanently or totally disabled, and one radiologist who found no narrowing of the disc, and we have two doctors testifying for the plaintiff that in their opinion plaintiff either had a disc injury or such a strain to his back as to render him totally disabled to perform heavy manual labor, which he was doing at the time of his injury, and one radiologist who testified that he was positive that there was a narrowing of one disc space in plaintiff’s back.
Aside from the medical testimony, defendant attempted to show that plaintiff had performed heavy manual labor subsequent to his injury, that is, 'had loaded logs with a canthook, driven a truck, and unloaded lumber and worked in a store. Plaintiff readily admitted that he attempted to help his uncles who were engaged in the logging business but that he was unable to do so. The testimony shows that plaintiff attempted to work in a grocery store and only lasted one day. He testified that 'he could not bend over to lift objects, and standing on. his feet caused him pain in his back. It is also shown that he did, on one occasion, drive a truck loaded with lumber but he only unloaded a few of the boards, and that he attempted to use a canthook but was unable to do so. In other words, the plaintiff did not perform any heavy manual labor as contended by defendant.
In this case, either the plaintiff was disabled for eleven days only or permanently and totally disabled on the date of the trial, in which event he would be entitled to compensation not to exceed 400 weeks. We believe that plaintiff is entitled under the facts in this case to compensation not to exceed 400 weeks. This opinion is based upon the fact that plaintiff suffered an accident as alleged, and that plaintiff reported an injury to his back to his straw boss or foreman within thirty minutes or an 'hour after it. happened while riding back to Lake 'Charles, and he reported to Dr. Fisher, defendant’s physician, the same afternoon and Dr. Fisher diagnosed his injury as a mild lumbosacral strain. Also, Dr. Bar-ham, defendant’s witness, diagnosed plaintiff’s injury as a severe lumbosacral sprain but thought that he would be well within four weeks from the date of his examination, which was June 29, or a period of disability, in his opinion, of three months and twenty-six days. It is true that this doctor testified that his recommendation of four weeks temporary disability from the date of his examination was based upon plaintiff’s complaints of pain only, however, he did make such a recommendation and such a finding.
No one testified that he was a malingerer, only that he exaggerated his symptoms. Dr. Campbell was of the opinion that his complaints were exaggerated but nevertheless believed that plaintiff was totally disabled. So did Dr. Morris. Also, the special X-ray made by Dr. McKinney, which he testified was more accurate than the usual X-ray and which fact no other radiologist disputed, is strong corroborative evidence in favor of the plaintiff and the diagnoses of Doctors Morris and Campbell. The fact that plaintiff attempted to work and was unable to do so is also corroborative testimony in his favor.
Counsel for the defendant has called to our attention that plaintiff failed to call members of his family or friends to prove that he complained of pain. From reading the testimony it appears that this plaintiff made a good witness and did not hide anything when questioned about his endeavors to work.
It is therefore ordered that the judgment of the District Court be amended and that there be judgment in favor of plaintiff awarding him compensation at the rate of *292 $19.50 per week for a period not to exceed 400 weeks from April 5, 1950, with legal interest from maturity on the weekly installments, the defendant to pay all costs.
As amended the judgment is affirmed.